IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 15, 2019 Session

**DUSTIN W. BROWN v. SARAH FARLEY**

**Appeal from the Probate and Family Court for Cumberland County**
**No. 2015-PF-4672     Larry M. Warner, Judge**

_____

**No. E2018-01144-COA-R3-CV**

_____

In this child custody action, the trial court awarded custody of the minor child to the child's father despite the fact that the child had resided with and/or been in the legal custody of the respondent maternal grandmother for a significant period of time. The maternal grandmother has appealed. Discerning no reversible error, we affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and W. NEAL MCBRAYER, JJ., joined.

Wanda G. Sobieski, Diane M. Messer, Caitlin Elledge, and Zachary T. Powers, Knoxville, Tennessee, and Howard Upchurch, Pikeville, Tennessee, for the appellant, Sarah Farley.

Ivy J. Gardner, Crossville, Tennessee, for the appellee, Dustin W. Brown.

**OPINION**

I.  Factual and Procedural Background

On November 5, 2014, the State of Tennessee on behalf of the petitioner, Dustin W. Brown ("Father"), filed a petition in the Cumberland County Juvenile Court ("juvenile court") seeking to establish paternity and set child support with respect to a minor child, A.W.J. ("the Child"), who was born in December 2010 to Keili J. ("Mother").[1]  Subsequently, on September 14, 2015, Father filed a petition in the

---

[1] Father and Mother were never married.

Cumberland County Probate and Family Court ("trial court"), seeking to establish parentage and acquire legal custody of the Child. The respondent, Sarah Farley ("Grandmother"), the Child's maternal grandmother, previously had been granted temporary custody of the Child by Mother in 2012.

In his petition filed in the trial court, Father asserted that DNA testing had established that he was the Child's biological father. Father further asserted that he had enjoyed co-parenting time with the Child until December 2014 and that he was not provided notice of the grant of custody to Grandmother at the time the prior custody order was entered. According to Father, Grandmother had recently refused to respond to his requests to visit the Child. Father also averred that he was a proper and fit parent and should be granted custody of the Child. Father concomitantly filed a motion seeking the institution of a temporary co-parenting schedule.

On October 14, 2015, Grandmother filed a response to Father's petition, stating that at the time the Child was born, Mother was suffering from "several mental and emotional issues and had sexual relations with several individuals and was uncertain whom the biological Father of the minor child was." Grandmother averred that Mother had given birth to two other children in the years following the birth of the Child. According to Grandmother, Mother transferred custody of all three children to Grandmother in December 2012 due to Mother's ongoing mental health issues. Grandmother claimed that Father was not given notice at that time because of uncertainty regarding the Child's parentage. Grandmother further averred that she should retain custody of the Child and that Father should be ordered to pay child support.

On November 18, 2015, the juvenile court entered an agreed order transferring the juvenile court matter to the "[c]ustody matter open in the Probate and Family Court for Cumberland County, Tennessee, case number 2015-PF-4672." On April 25, 2017, the trial court entered an Agreed Order declaring Father to be the Child's biological father and awarding Father temporary co-parenting time to be supervised by the Child's counselor for two weeks. The order also provided that Father would then receive co-parenting time every Saturday and Tuesday for the following four weeks. After the initial six-week period, according to the order, the parties would "revisit [Father's] parenting time upon the recommendations of [the Child's counselor]."

The trial court conducted a bench trial concerning Father's petition for custody on April 3 and 6, 2018. Father, Mother, Grandmother, the paternal grandmother, and the Child's counselors presented testimony during the hearing. The court entered a written order on April 6, 2018, wherein the court granted Father's petition for parentage and custody, finding it to be well taken. The court additionally granted Father "full legal custody of the minor child, [A.W.J.], effective immediately." The court clarified that its order was a "partial order and a full order will be entered in this cause as soon as it is available."

Following the preparation and filing of competing proposed orders by the parties, the trial court entered a final order on May 24, 2018. In this order, the court found that Father's "superior parental rights take precedence in this matter" and that Mother had waived her superior parental rights by agreeing to transfer custody to Grandmother in an agreed order dated December 13, 2012. The court also found that although Grandmother and Mother were aware that "there was a high likelihood" that Father was the Child's biological father at the time the agreed order transferring custody was entered, they failed to provide Father notice of the custody transfer. The court further found that entry of the December 2012 order transferring custody was entered without Father's knowledge and in violation of his due process rights.

The trial court determined that Father's testimony was credible regarding the Child's best interest, as was the testimony of the Child's counselors. According to the court, the Child had a parent/child relationship with Father, and "the extreme issues in this matter show a need for drastic measures to protect the parent/child relationship between [Father] and [the Child]." The court determined that Grandmother's testimony was not credible. Based on these findings, the court changed the Child's surname to that of Father and awarded Father full legal custody of the Child effective immediately. The court determined that this change of custody was in the Child's best interest. Grandmother timely appealed.

## II. Issues Presented

Grandmother presents the following issues for our review, which we have restated slightly:

1.    Whether the trial court erred by failing to set forth the legal standard it applied in this matter prior to transferring custody of the Child from Grandmother to Father.

2.    Whether the trial court erred by failing to analyze the four "exceptional circumstances" set forth in *Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002), before determining that Father was entitled to assert superior parental rights to the Child.

3.    Whether the trial court erred by failing to find that none of the four above-mentioned "exceptional circumstances" existed in this case.

4.    Whether the trial court erred by failing to require Father to establish that a material change in circumstance had occurred following the transfer of custody from Mother to Grandmother.

5. Whether the trial court erred by failing to perform a best interest analysis if a material change in circumstances was established.

6. Whether the trial court erred by failing to find that placing the Child in Father's custody would result in a substantial risk of harm to the Child.

7. Whether the trial court erred by failing to set forth sufficient findings of fact and conclusions of law to enable this Court to conduct a meaningful review.

8. Whether the trial court erred by adopting Father's proposed final order, which contained findings and conclusions that did not appear in the court's memorandum opinion.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

Furthermore, as this Court has previously explained:

As a general rule, decisions regarding custody are within the broad discretion of the trial judge and will not ordinarily be reversed absent some abuse of that discretion. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992); *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). Accordingly, a trial court's discretionary judgment will be upheld if the decision is one about which reasonable minds might disagree. A trial court abuses its discretion when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

*Vinson v. Ball*, No. E2015-01856-COA-R3-JV, 2016 WL 6610358, at *6 (Tenn. Ct. App. Nov. 9, 2016) (quoting *In re Abigail G.D.H.*, No. E2011-00118-COA-R3-JV, 2011 WL 3209180, at *5-6 (Tenn. Ct. App. July 28, 2011)).

## IV. Proper Legal Standard

The first five issues raised by Grandmother in this appeal relate to the overarching issue of whether the trial court applied the proper legal standard in this custody dispute. The trial court determined that Father possessed superior parental rights with respect to custody of the Child. Grandmother argues that the trial court should have utilized the standard applied by our Supreme Court in *Blair*, 77 S.W.3d at 148 (superseded by statute on other grounds as recognized in *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013)), to determine that Father did not possess superior parental rights in this matter because a prior custody order existed. Grandmother posits that if the trial court had applied the proper standard from *Blair*, the court would have engaged in an analysis of whether a material change of circumstances had occurred since entry of the prior custody order in 2012. *Id*.

As our Supreme Court has elucidated, "the Tennessee Constitution protects the fundamental right of natural parents to have the care and custody of their children" and "requires that courts deciding initial custody disputes give natural parents a presumption of 'superior parental rights' regarding the custody of their children." *Blair*, 77 S.W.3d at 141 (quoting *In re Askew*, 993 S.W.2d 1, 4 (Tenn. 1999)). Persons who are not a child's biological parent do not possess the same constitutionally protected interests as are possessed by a biological parent. *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001). "When faced with competing custody claims by a biological parent and a third party, the courts must favor the biological parent." *Id.*

As our Supreme Court explained in *Blair*, the presumption of superior parental rights recognizes that "parental rights are superior to the rights of others and continue without interruption unless a biological parent consents to relinquish them, abandons his or her child, or forfeits his or her parental rights by some conduct that substantially harms the child." *See Blair*, 77 S.W.3d at 141 (quoting *O'Daniel v. Messier,* 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995)). The High Court also explained that "the parent's voluntary transfer of custody to a non-parent, with knowledge of the consequences of that transfer, effectively operates as a waiver of [superior parental rights]." *Id*. at 147. As the *Blair* Court elucidated:

> [W]ith respect to custody modification issues, a natural parent enjoys the presumption of superior rights under four circumstances: (1) when no order exists that transfers custody from the natural parent; (2) when the order transferring custody from the natural parent is accomplished by fraud or without notice to the parent; (3) when the order transferring custody

from the natural parent is invalid on its face; and (4) when the natural parent cedes only temporary and informal custody to the non-parents. Consequently, when any of these circumstances are present in a given case, then protection of the right of natural parents to have the care and custody of their children demands that they be accorded a presumption of superior parental rights against claims of custody by non-parents.

*Id.* at 143.[2]

In the case at bar, the evidence was undisputed that Father never voluntarily relinquished his superior parental rights by transferring custody to a non-parent. The only prior custody order in this matter was the December 13, 2012 order entered by the juvenile court, wherein Mother transferred temporary custody of the Child to Grandmother and Grandmother's husband. Grandmother admits that Father was not a party to this order and that he was provided no notice prior to its entry.

Grandmother asserts that *Blair* is controlling authority in this matter because there is a prior order transferring custody to her. We disagree. Because Father was not a party to the prior order and never voluntarily relinquished his superior parental rights, he still retains those rights. *See Blair*, 77 S.W.3d at 141. Furthermore, Father was not provided with notice regarding entry of the previous temporary custody order. *Id*. at 147.

Father's position in this action is more factually similar to that of the father in the case of *Means v. Ashby*, 130 S.W.3d 48, 57 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. Mar. 1, 2004). In *Means*, the parents were unmarried at the time of their child's birth, although they did marry shortly thereafter. *Id*. at 50. Following their divorce, the mother signed a document transferring custody of the child to her sister, and the father was provided no notice of this custody transfer. *Id*. at 52. The father continued to support the child. *Id*. at 53. The mother's sister subsequently filed a petition seeking to terminate the mother's and father's parental rights to the child. *Id*.

Although the trial court in *Means* determined that there were insufficient grounds to terminate parental rights, the court ruled that the child should remain in the custody of the non-parent guardian. *Id*. On appeal, this Court affirmed the trial court's denial of the petition for termination but vacated the trial court's custody order. *Id*. at 54. This Court elucidated that the custody dispute should have been analyzed using different legal

---

[2] We note that although the *Blair* Court incorporated the use of the term "natural" parent, Tennessee law recognizes no legal distinction between a biological parent and an adoptive parent. *See* Tenn. Code Ann. § 36-1-121(a) ("The signing of a final order of adoption . . . establishes from that date the relationship of parent and child between the adoptive parent or parents and the adopted child as if the adopted child had been born to the adoptive parent or parents.").

standards for the mother as opposed to the father because the mother had relinquished her superior parental rights but the father had not. *Id*. at 56. The *Means* Court explained:

> The trial court, having correctly determined that the parental rights of neither the natural father nor the natural mother could be terminated under the proof offered in the case, then turned to the issue of custody.
>
> * * *
>
> Two decisions of the Tennessee Supreme Court control the standards by which the action of the trial court must be reviewed in this case. First, we have *In re Askew,* 993 S.W.2d 1 (Tenn. 1999) and second we look at *Blair v. Badenhope,* 77 S.W.3d 137 (Tenn. 2002). *Askew* makes clear that, in an initial custody dispute between parents and non-parents, a natural parent may only be deprived of custody of a child upon a showing of substantial harm to the child. This rule is modified by *Blair,* which holds that the superior parental rights established in *Askew* do not apply where a valid court order of custody is in place at the time the natural parent attempts to gain custody. In such cases, the natural parent must prove a material change in circumstances that would make a custody change in the child's best interest.
>
> Since the natural father, David Vincent Ashby, was not a party to the Order of December 29, 1997 entered in the Rutherford County Circuit Court, that Order, is ineffective as to him. Thus, his case is reviewable under *Askew* without regard to *Blair.*

*Means*, 130 S.W.3d at 56-57.

Similarly, in *In re B.C.W.*, No. M2007-00168-COA-R3-JV, 2008 WL 450616, at *4 (Tenn. Ct. App. Feb. 19, 2008), the father of a child born out of wedlock was not a party to a document executed by the mother, which transferred custody of their child to her parents. The father visited with the child for several years and entered into an order regarding visitation before subsequently petitioning for custody of the child. *Id*. at *1. The trial court applied the standard of whether the father had demonstrated that a material change of circumstances had occurred and ultimately denied the father's petition. *Id*. at *2.

On appeal in *B.C.W.*, this Court determined that the trial court had erred by applying an incorrect standard when analyzing the custody dispute between the child's father and a grandparent. *Id*. at *3. Following a discussion of *Blair,* this Court explained:

After considering the foregoing principles, we have determined the trial court, in this case, should have afforded [the father] superior parental rights. The December 17, 1996 order appointing [the maternal grandparents] the guardians of the unborn infant was obtained without notice to [the father], specifically reserved his rights and, thus, had no legal significance with regard to the relinquishment of his superior parental rights.

*Id*. at \*4.

In the case at bar, Father never voluntarily relinquished his superior parental rights to the Child. His rights were unaffected by the temporary custody order signed by Mother in 2012, of which he had no notice. Therefore, the trial court properly determined that Father maintained superior parental rights with regard to the custody dispute with Grandmother. As such, Father could not be deprived of custody absent a showing of risk of substantial harm to the Child. *See In re Askew,* 993 S.W.2d at 5.

## V. Risk of Substantial Harm

Grandmother contends that the trial court erred by failing to find that placing the Child in Father's custody would result in a risk of substantial harm to the Child. Grandmother posits that Father has a history of alcoholism and related charges for driving while intoxicated, as well as a history of domestic violence. As this Court has previously explained concerning a finding of "substantial harm":

The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*McGarity v. Jerrolds*, 429 S.W.3d 562, 573 (Tenn. Ct. App. 2013) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).

During his testimony, Father explained that although he had struggled with alcoholism in the past, he had been sober for two years by the time of trial. Father further explained that he had completed domestic violence classes in 2015 as a result of his domestic violence charge. By the time of trial, Father was living with his girlfriend and her family in a situation that he described as "stable." Father also testified that he had been working full-time for two years prior to trial, building boats for Leisure Craft.

Father stated that the Child had his own room at Father's residence and that the Child enjoyed his visits with Father.

Father's mother, Teresa Kirby, testified that Father was a "remarkable" man, who had "grown up" and was "being the best daddy to that little boy that he needs to be." Ms. Kirby further stated that Father was "super good" with the Child and that Father no longer struggled with issues related to alcohol or anger. According to Ms. Kirby, Father was a "completely different person," and Father was readily capable of caring for the Child by himself.

The Child's past and current counselors both testified that they had supervised visits between Father and the Child and that those visits had gone well. The counselors stated that Father was appropriate with the Child and that they had no concerns. The Child's current counselor added that the Child seemed happy when he was with Father.

At the close of trial, the trial court rendered an oral ruling, stating in pertinent part:

What has the dad done? Three years ago he probably wasn't worth a hoot. For sure at least for the last two years, he's got his act together. A responsible guy. Stable housing. I'm impressed.

* * *

The most telling thing of all, how did this thing get started? Dad filed for paternity knowing he was walking in to having to pay child support. Creating an obligation for himself, but he did it. That says a lot about character. That says a lot about his love for his child.

The father struck me as being very credible. I believe everything he said on the witness stand.

* * *

So forget the parties. . . . Go to the independent people who don't have a dog in the fight, the testimony of two counselors. They both spoke very highly of the father. . . . They said only good things about him.

Following a thorough review of the testimony, we determine that the evidence preponderates in favor of the trial court's findings. The evidence presented at trial demonstrated no "real hazard or danger" to the Child in Father's care, nor any harm that was "sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not." *See McGarity*, 429 S.W.3d at 573. By the time of trial, Father had been enjoying bi-weekly visits with the Child in Father's home for

- 9 -

approximately one year, and no adverse incidents had occurred. Father demonstrated that he had successfully remedied his issues concerning alcohol and domestic violence. Father further demonstrated that he had maintained a stable home, job, and relationship for some time. Accordingly, determining that the trial court's findings were supported by a preponderance of the evidence, we conclude that the trial court did not err by declining to find that placing the Child in Father's custody would result in a substantial risk of harm to the Child.

## VI. Sufficiency of Factual Findings

Grandmother's final issues concern the sufficiency of the trial court's factual findings. The trial court made findings of fact and conclusions of law, both orally at the conclusion of trial and also in its written May 24, 2018 final order. Grandmother asserts that the trial court erred by failing to set forth sufficient findings of fact and conclusions of law to enable this Court to conduct a meaningful review of the trial court's custody determination. Grandmother also posits that the trial court erred by adopting Father's proposed final order, which purportedly contained findings and conclusions that did not appear in the court's oral ruling.

With respect to the trial court's adoption of a proposed order prepared by one of the parties that contains findings of fact and conclusions of law, our Supreme Court approved of this practice many years ago so long as certain safeguards remain in place. *See Delevan-Delta Corp. v. Roberts*, 611 S.W.2d 51, 52-53 (Tenn. 1981). As the High Court explained:

> We agree that the preparation of findings and conclusions is a high judicial function. We are committed to the requirement that the trial court's findings and conclusions be its own. However, we are also aware that the thorough preparation of suggested findings and conclusions by able counsel can be of great assistance to the trial court. In an effort to strike a balance between these considerations, we hold that although it is improper for the trial court to require counsel to prepare findings, it is permissible and indeed sometimes desirable for the trial court to permit counsel for any party to submit proposed findings and conclusions. Findings prepared by the trial judge which represent [the judge's] independent labor are preferable, however we do not disapprove of party-prepared findings. . . . We wish to point out that before adopting findings prepared by counsel, the trial judge should carefully examine them to establish that they accurately reflect [the judge's] views and conclusions, and not those of counsel.

*Id.*

In this matter, "[n]othing in the record indicates that the trial court failed to review

- 10 -

both proposed orders before entering" its order. *See McGarity*, 429 S.W.3d at 568. Furthermore, "[n]othing in the record indicates that the order entered does not reflect the trial court's view of the case." *Id*. (quoting *Beach Cmty. Bank v. Labry*, No. W2011-01583-COA-R3-CV, 2012 WL 2196174, at *5 (Tenn. Ct. App. June 15, 2012)). As our Supreme Court has explained, "reviewing courts have declined to accept findings, conclusions, or orders when the record provides no insight into the trial court's decision-making process, or when the record 'casts doubt' on whether the trial court 'conducted its own independent review, or that the opinion is the product of its own judgment.'" *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014) (quoting *Bright v. Westmoreland Cnty.,* 380 F.3d 729, 732 (3d Cir. 2004)) (other internal citations omitted). Following our review of the record, including the trial court's oral ruling and written order, we conclude that the record reflects the trial court's decision-making process and that the order appears to be the product of the trial court's independent judgment. *See Smith*, 439 S.W.3d at 316. Therefore, we determine that Grandmother's issue regarding entry of the proposed order is without merit.

With regard to the sufficiency of the trial court's findings, our Supreme Court has explained:

> Requiring trial courts to make findings of fact and conclusions of law is generally viewed by courts as serving three purposes. First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." 9C *Federal Practice and Procedure* § 2571, at 221-22. A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." *Id.* at 222. Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal.
>
> * * *
>
> There is no bright-line test by which to assess the sufficiency of factual findings, but "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." 9C *Federal Practice and Procedure* § 2579, at 328. Courts need not make findings on stipulated or undisputed facts, unless conflicting inferences can be drawn from undisputed facts. *Id.* at 332-33.

*Lovlace v. Copley*, 418 S.W.3d 1, 34-35 (Tenn. 2013) (footnote and additional internal

- 11 -

citations omitted).

Following our thorough review of the record, including the trial court's final order, we conclude that the trial court made sufficient findings to enable this Court to conduct a meaningful review. The trial court found in its written order that Father's superior parental rights took precedence. It is undisputed that Father did not participate in the previous transfer of custody to Grandmother and was not notified of the entry of that prior order. Accordingly, the trial court's written order correctly recites that the December 13, 2012 order was entered without Father's knowledge. As explained in an earlier section of this Opinion, because Father had not voluntarily relinquished his superior parental rights and did not have prior knowledge of the December 13, 2012 order, he maintained his superior parental rights at the time of the custody trial, such that the trial court was not required to conduct an analysis of whether a material change of circumstance had occurred. Furthermore, as explained in the prior section of this Opinion, the trial court made sufficient findings concerning the lack of a risk of substantial harm to the Child in Father's care. Ergo, the trial court's findings and conclusions afforded this Court "a clear understanding of the basis of a trial court's decision." *See id*. at 34. We therefore conclude that Grandmother's issue regarding the sufficiency of the trial court's findings is without merit.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. Costs on appeal are taxed to the appellant, Sarah Farley. We remand this matter to the trial court for enforcement of the judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE